**SHEARER, Admr v GASSTMAN et**

Ohio Probate Court, Franklin Co

No 66069

## OPINION

By McCLELLAND, Probate Judge

In deciding this question we are satisfied to rely upon the recent (June 20, 1933,) decision of Judge Walther of the Common Pleas Court of Cuyahoga County, in the case of **Davey et v Climo et, 30 N.P. (N.S.) 457,** (Ohio Law Reporter of July 10, 1933). The same question was involved in that case and the facts were similar except that one of the uncles of the decedent was living. Very eminent counsel of Cleveland were interested in the case, having submitted rather exhaustive briefs, and the opinion of Judge Walther we think, is well worked out to the logical conclusion. The court held in that case that one-half of the decedents estate went to the lineal descendants of the paternal grandparents and the other one-half went to the lineal descendants of the maternal grandparents.

As to which statute applied to the case, the court in its opinion makes this significant statement, at the bottom of page 463:

"In the oral argument and in the briefs submitted counsel for plaintiffs in error and

defendants in error do not agree as to whether the rule laid down in the English case of Gibson v Fisher, L. R. 5, Eq., 51, decided by the Master of the Rolls, or whether the case of Robinson v Shepherd, 32 Bevan's Reports, decided by the Lord Chancellor, 665 4 De. G., J. S., 192 is better authority. It happens that the court is not called upon to determine which of these two cases is to be regarded more favorably for the reason that the Ohio statute above referred to, to-wit, §10503-4 sub-section 8, GC lays down the rule. As a matter of fact the case law under §10503-9 GC does not control for the reason just stated. The court has studied the authorities cited by counsel, and does not deem it necessary that the same be reviewed in this opinion because, as above stated, since we hold that §10503-4, sub-section 8, GC being a new and special enactment, its provisions control over §10503-9 GC and the cases decided under said latter section."

The above statement with reference to §10503-9 GC not applying to that case, may be applied with equal force to §10503-7 GC, the section upon which counsel in support of the negative side of the question in this case rely.

While the case above referred to disposes of the question, we cannot resist the observation in passing, that we fail to see how §10503-7 GC applies at all to this case where we have descendants in the Fourth, Fifth and Sixth degree of consanguinity to said decedent, as "determined by degrees of relationship computed by the rules of civil law," which law by express statute we are required to follow (§10503-2 GC).

The above case is the only one called to the court's attention which has decided this question under our new statute of descent and distribution, and we are informed by counsel that this statute was not adopted from any other state.

It follows from the above quotation from Davey et v Climo et, that the cases under the old law cited by counsel need not be reviewed, for, as the court says, the case law does not control for the reason that §10503-4, sub-section 8, GC, lays down the rule.

The court in interpreting the language of §10503-4, sub-section 8, GC, in the above case came to the following conclusion, on page 466:

"Therefore, the court being of the opinion that §10503-4, sub-section 8, GC controls over §10503-9 GC and that the stirps or roots are to be found in the respective grandparents and not the first generation removed from such grandparents, the judgment of the Probate Court is reversed and descent and distribution is ordered in accordance with this opinion."

and on page 464 the court observed:

"Upon a very thorough and careful consideration of §10503-4, sub-section 8, GC, which is in the following language:

"If there be no grandparent or grandparents, then to the lineal descendants, if any, of such grandparent or grandparents per stirpes,"

the court is unable to escape the conclusion that when the legislature used the words "grandparent or grandparents" it identified and intended such grandparent or grandparents to be the root or stock. There does not seem to be any other good reason why the legislature used these words. If the uncles and aunts were to be the roots then the legislature should have used different language, and if it intended the uncles and aunts to be the roots, it should have said, in addition to that which it did say,—

"Or to the uncles and aunts, if any, of such decedent and their lineal descendants, per stirpes," or it might have adopted the language substantially as follows:

"If there be no grandparent or grandparents, then to the lineal descendants, if any, of such grandparent or grandparents," and to their descendants "per stirpes."

It is of course elementary that one cannot be a stirpes or root or stock and at the same time be a taker, because the phrase per stirpes anticipates the decease of the root."

The term per stirpes is defined in "V" Words and Phrases, 935, as follows:

"Per stirpes means by or according to stock or root; by right or representation. When descendants take by representation of their parent they are said to take per stirpes: that is children take among them the share which their parent would have taken if living."

and in Webster's Dictionary as follows:

"By stocks, as representatives of stocks: used to designate that mode of considering or reckoning the rights or liabilities of descendants in which the children of any one descendant collectively have or take only the share which their parent would have taken if living."

It must be observed that §10503-4 GC is

a new departure from the old law, and that the use of the term **per stirpes** throughout the new section, changes the whole complexion of the law of descent and distribution in Ohio.

Our conclusion therefore is that the one-half of the estate of said decedent, which goes to the lineal descendants of the paternal grandparents should be divided into three equal parts, and distributed among such lineal descendants, per stirpes, and the other half, which goes to the lineal descendants of the maternal grandparents should be divided into five equal parts, and distributed among such lineal descendants, **per stirpes.**

Since the lineal descendants of both sets of grandparents take through those grandparents, and not directly in their own right, the children of Edward Coady, deceased, and James Coady, deceased, who are double cousins of said descendant, take their proportionate share of the one-half of the estate as lineal descendants of the paternal grandparents, and their proportionate share of the other one-half as lineal descendants of the maternal grandparents. It could not be otherwise under the holding of Davey et v Climo et, supra.

One more question has been submitted to the court, and that is whether Lena Cummins, an adopted daughter of Daniel Cummins, deceased, is entitled to the share of her adopting parent, the same as if she was his natural child. §10512-19 GC permits' said Lena Cummins to inherit the share of Daniel Cummins, her adopting parent.

Let an entry be drawn in accordance with this opinion.